[855 NYS2d 212]

In the Matter of DARYLL BOYD JONES, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, April 1, 2008

APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Melissa D. Broder* of counsel), for petitioner.

*Daryll Boyd Jones*, Laurelton, respondent pro se.

## OPINION OF THE COURT

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

Ordered that the branch of the motion which is for leave to reargue is granted, and the motion is otherwise denied; and it is further,

Ordered that, upon reargument, the unpublished opinion and order of this Court dated February 1, 2008 is recalled and vacated and the following is substituted therefor:

Per Curiam.

The Grievance Committee for the Second and Eleventh Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition dated October 25, 2006, containing 11 charges of professional misconduct. After a pretrial conference on March 6, 2007, and a hearing on April 10, 2007, the Special Referee sustained all 11 charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems necessary. The respondent cross-moves to set aside the findings of the Special Referee, for de novo review, and, if the charges are sustained, for consideration of mitigating factors before the imposition of discipline.

Charge one alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

The respondent maintained an escrow account at Citibank, identified as "Daryll Boyd Jones P.C. IOLA" (hereinafter IOLA 6274). On or about August 17, 2000, the respondent deposited the sum of $25,000 into IOLA 6274 on behalf of a client, Delores Boyd. That sum was entrusted to him as fiduciary. As of October 11, 2000, the respondent should have been holding the sum of $5,559.58 on behalf of Ms. Boyd. However, the balance in IOLA 6274 was $615.42 on October 4, 2000, and $-4,944.04 on October 11, 2000.

Charge two alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

On or about October 19, 2000, the respondent deposited the sum of $5,000 from a personal injury settlement into IOLA 6274 on behalf of his client, Felicia Sutton. In or about January 2001, the respondent should have been holding in excess of $3,000 for Ms. Sutton. However, the balance in IOLA 6274 at that time was only $2,826.02. The respondent never paid Ms. Sutton any of the funds she was entitled to receive.

Charge three alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

Between January 2003 and November 2003, the respondent was holding funds in IOLA 6274 for several clients in a fiduciary capacity. During that interval, the respondent made debit purchases on IOLA 6274 from "The Wiz," "BMW," and "All Own Parts, Inc."

Charge four alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

During February 1998, the respondent was holding funds in IOLA 6274 for several clients in a fiduciary capacity. On or about February 4, 1998, the respondent wrote a check on IOLA 6274, payable to Ms. Francine's Day School, for his son's tuition.

Charge five alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fi-

duciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

On or about May 2001, the respondent was holding funds in IOLA 6274 in a fiduciary capacity. On or about May 16, 2001, he wrote a check drawn on IOLA 6274, payable to the Mayfair Hotel in the sum of $70 for a motel room.

Charge six alleges that the respondent improperly converted, to his own use, funds which had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

In or about 1998 through 2003, the respondent engaged in a pattern and practice of writing checks to clients prior to depositing their settlement funds into IOLA 6274. During that interval, the respondent was holding funds in a fiduciary capacity for clients.

Charge seven alleges that the respondent improperly commingled funds entrusted to him as a fiduciary, incident to his practice of law, with personal funds, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

Between December 2000 and March 2003, the respondent repeatedly made electronic transfers of funds from his Citibank operating account (hereinafter Citibank 6266) to IOLA 6274. From 2000 to 2003, the respondent failed to withdraw his legal fees promptly from IOLA 6274.

Charge eight alleges that the respondent failed to maintain required records for his attorney escrow account, in violation of Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]).

The respondent failed to contemporaneously maintain a ledger book or similar record for IOLA 6274, showing the source of all funds deposited therein, the names of all persons for whom funds were held, the amount of such funds, the charges or withdrawals from the account, and the names of all persons to whom such funds were disbursed.

Charge nine alleges that the respondent engaged in a pattern and practice of making cash withdrawals from his IOLA account, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).

Between November 1998 and March 2003, the respondent made at least 27 ATM withdrawals from IOLA 6274.

Charge ten alleges that the respondent engaged in a pattern and practice of charging excessive fees, in violation of Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11).

The respondent entered into contingency fee retainer agreements on personal injury cases purportedly entitling him to 40% of the net recovery.

Charge eleven alleges that the respondent engaged in a lack of candor during the Grievance Committee's investigation of complaints of professional misconduct filed against him, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about August 4, 2000, the respondent provided the Grievance Committee with an answer to a complaint based on a returned check drawn on his Citibank IOLA account 8004 (hereinafter IOLA 8004). In that answer, the respondent stated that IOLA 8004 was his IOLA account. At an investigative appearance in May 2005, the respondent testified that IOLA 8004 was never an escrow account and that he did not have checks associated with that account until 2003.

Based on the evidence adduced, the Special Referee properly sustained all 11 charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted and that branch of the respondent's cross motion which is for de novo review is denied.

In determining an appropriate measure of discipline to impose, the Grievance Committee notes that the respondent's prior disciplinary history consists of: (1) an admonition issued in October 2002 for misrepresenting the status of his client's divorce matter and delaying the filing of a qualified domestic relations order for the client, (2) a letter of caution issued in November 2001 for failing to obtain a signed retainer agreement prior to receiving payments from his client, failing to provide a client with a statement of client's rights and responsibilities, and failing to promptly respond to his client's telephone calls, and (3) a letter of caution issued in October 2000 for failing to register as an attorney.

In opposition to the motion to confirm and in support of his cross motion, the respondent posits both procedural and substantive arguments. The respondent first maintains that the Grievance Committee failed to offer any admissible evidence to establish the charges. Next, he maintains that deposition transcripts were never given to him for authentication and cor-

rection, that the transcripts of his deposition were improperly used at the hearing to establish the truth of matters to which he testified at his deposition, notwithstanding the fact that he was available to testify at the hearing, and that uncertified bank records were inadmissible. The Special Referee denied similar objections by the respondent at the hearing. It was noted at the hearing that the respondent was shown the relevant bank documents during his prior appearances before the Grievance Committee, and that he was in possession of the transcripts, since he was served with the order to show cause seeking his interim suspension, which was accompanied by the petition in this proceeding.

The respondent's contention that counsel for the Grievance Committee misled him and coerced his "limited admissions" is totally unsubstantiated.

The respondent asks this Court to consider the numerous character letters submitted by satisfied clients, as well as those submitted by religious and business leaders with whom he regularly comes in contact. He emphasizes the remedial and preventative measures he has put in place and insists that there is no admission or proof of knowing and willful misconduct. The respondent further asks this Court to note that no law school courses ever taught him the rules of ethics which he is now alleged to have violated. He claims that as a private practitioner, he has had no role models to follow. He asks this Court to consider the devastating effect that the loss of his law license would have upon his wife and children, who rely on him for ongoing support.

Notwithstanding the mitigation advanced and the respondent's claimed lack of venality, the respondent is guilty of serious professional misconduct and his arguments evinced a fundamental ignorance of the disciplinary rules regarding proper maintenance of an escrow account. Throughout his testimony, the respondent claimed confusion and a faulty memory with respect to dates. This led the Special Referee to conclude that the respondent possessed a persistent lack of candor when confronted by the Grievance Committee.

However, based upon the respondent's expressed remorse and acceptance of responsibility for his misconduct, and the comprehensive remedial measures that he has undertaken since the commencement of the disciplinary proceeding to ensure that his escrow violations would not be repeated, we conclude that the respondent's misconduct warrants his suspension from the practice of law for a period of five years.

Rivera, J.P., Spolzino, Ritter and Santucci, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that those branches of the respondent's cross motion which are to set aside the findings of the Special Referee and for de novo review are denied; and it is further,

Ordered that the branch of the respondent's cross motion which is for consideration of the mitigation offered is granted; and it is further,

Ordered that the respondent, Daryll Boyd Jones, is suspended from the practice of law for a period of five years, commencing 30 days from service upon him of this order, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof that (1) during the said period he refrained from practicing or attempting to practice law; (2) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); (3) he has complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (4) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Daryll Boyd Jones, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Daryll Boyd Jones, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).